IN RE ALEXANDER C.*
(AC 21673)

Dranginis, Flynn and Daly, Js.

Argued October 15—officially released December 25, 2001

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*William R. Kinloch,* for the appellant (respondent father).

*Jane R. Rosenberg,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Eliot D. Prescott,* assistant attorney general, for the appellee (petitioner).

*Eric J. Palladino,* for the minor child.

*Opinion*

DRANGINIS, J. The respondent father[1] appeals from the judgment of the trial court terminating his parental rights with respect to his minor child, A, pursuant to General Statutes (Rev. to 1999) § 17a-112 (c) (3) (B), now (j) (3) (B),[2] and (c) (3) (D), now (j) (3) (D).[3] The respondent claims that the court improperly found that

---

[1] The respondent mother consented to the termination of her parental rights with respect to A on October 4, 2000. Because she is not a party to this appeal, we refer to the respondent father as the respondent.

[2] General Statutes (Rev. to 1999) § 17a-112 (c) (3) provides in relevant part that a court may grant a petition to terminate parental rights if it finds by clear and convincing evidence that "(B) the parent of a child who (1) has been found by the Superior Court to have been neglected or uncared for in a prior proceeding, or (2) is found to be neglected or uncared for and has been in the custody of the commissioner for at least fifteen months and such parent has been provided specific steps to take to facilitate the return of the child to the parent pursuant to section 46b-129 and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

[3] General Statutes (Rev. to 1999) § 17a-112 (c) (3) (D), now (j) (3) (D), provides that the court may grant a petition to terminate parental rights if it finds by clear and convincing evidence that "there is no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child . . . ."

(1) no ongoing parent-child relationship existed because the respondent was incarcerated and had been ordered to have no contact with A since before his birth, and (2) the respondent failed to achieve a sufficient degree of personal rehabilitation on the basis of his failure to participate in rehabilitative programs. We affirm the judgment of the trial court.

In its memorandum of decision, the court recited the following facts and procedural history. In February, 1998, the commissioner of children and families (commissioner) was given custody of all five of A's older siblings following allegations that the respondent sexually and physically had abused A's half-sister.[4] The respondent was charged with sexual assault and risk of injury to a child in April, 1998, and was released from jail in June of that year on the condition that he have no contact with the victim or the other children. In December, 1998, after entering a plea of nolo contendere, the respondent was sentenced to twelve years imprisonment, execution suspended after forty-two months and two years probation, again with a protective order prohibiting any contact between the respondent and the children.

Meanwhile, A was born on August 31, 1998. The commissioner immediately filed a neglect petition and secured temporary custody of A. Two days after his birth, he was placed in a foster home. He was adjudicated neglected in October, 1998, and on April 6, 2000, the commissioner filed a petition to terminate the parental rights of the respondent and A's mother.[5] The petition alleged abandonment, failure to achieve a sufficient degree of personal rehabilitation, acts of omission or

[4] The four oldest children are from the respondent mother's previous marriage. The respondent lived with the mother and her children for several years, and is the father of A and E, who were born in 1995. See footnote 1.

[5] A's mother consented to termination of her parental rights in the child on October 4, 2000, and is not a party to this appeal.

commission that denied A necessary care, guidance or control and no ongoing parent-child relationship. A remains in foster care with the family that has cared for him since his birth, and the family wants to adopt him.

The respondent has been incarcerated for most of A's life and has never made any efforts to contact the department of children and families (department) regarding A's well-being. He never made any effort to participate in counseling or rehabilitative programs. The court, therefore, terminated the respondent's rights on the grounds of a lack of an ongoing parent-child relationship and failure to achieve a sufficient degree of personal rehabilitation. This appeal followed.

"Our standard of review on appeal from a termination of parental rights is whether the challenged findings are clearly erroneous. . . . The determinations reached by the trial court that the evidence is clear and convincing will be disturbed only if [any challenged] finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous. . . .

"On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . nor do we retry the case or pass upon the credibility of the witnesses. . . . Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling. . . .

"A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights [under General Statutes (Rev. to 1999) § 17a-112 (c), now (j)] exists by clear and convincing evidence. If the trial court determines that a statu-

tory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interests of the child." (Citation omitted; internal quotation marks omitted.) *In re Gary B.*, 66 Conn. App. 286, 289–90, 784 A.2d 412 (2001).

I

The respondent first claims that the court improperly found a lack of an ongoing parent-child relationship because it applied an incorrect legal standard.[6] Specifically, he claims that the court improperly based its decision on *In re Jessica M.*, 217 Conn. 459, 474–75, 586 A.2d 597 (1991), in which the respondent mother's visitation with the minor child and the child's memories or feelings for the mother were sufficient to preclude the termination of her parental rights on the alleged ground of lack of an ongoing parent-child relationship. The respondent in this case claims that because A was in the commissioner's custody essentially since birth, *In re Jessica M.* is inapplicable. Instead, the respondent claims, this case is controlled by *In re Valerie D.*, 223 Conn. 492, 613 A.2d 748 (1992), in which the commissioner took custody of the child at birth. We disagree.

General Statutes (Rev. to 1999) § 17a-112 (c) (3) (D), now (j) (3) (D), provides that the court may grant a petition to terminate parental rights if it finds by clear

---

[6] Prior to the court's granting a petition for the termination of parental rights, General Statutes (Rev. to 1999) § 17a-112 (c) (1), now (j) (1), requires the court to find, by clear and convincing evidence, that the department has made reasonable efforts to locate the parent and to reunify the child with the parent. A court need not make that finding, however, if the evidence establishes that the parent is unable or unwilling to benefit from reunification efforts or if the court determines at a hearing pursuant to General Statutes § 17a-110 (b) or General Statutes § 17a-111b that such efforts are inappropriate. General Statutes (Rev. to 1999) § 17a-112 (c) (1), now (j) (1). In this case, in a hearing pursuant to § 17a-110, the court determined that such efforts were inappropriate on the basis of the respondent's incarceration. The respondent does not challenge that finding on appeal.

and convincing evidence that "there is no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child . . . ."

"This part of the statute requires the trial court to undertake a two-pronged analysis. First, there must be a determination that no parent-child relationship exists, and second, the court must look into the future and determine whether it would be detrimental to the child's best interest to allow time for such a relationship to develop. . . . In considering whether an ongoing parent-child relationship exists, the feelings of the child are of paramount importance. . . . The ultimate question is whether the child has no present memories or feelings for the natural parent. . . . Feelings for the natural parent connotes feelings of a positive nature only." (Citations omitted; internal quotation marks omitted.) *In re Jonathon G.*, 63 Conn. App. 516, 525, 777 A.2d 695 (2001).

In *In re Jessica M.*, supra, 217 Conn. 459, our Supreme Court defined an ongoing parent-child relationship as it applies to noncustodial parents. The court stated that termination of a noncustodial parent's rights requires a finding that "the child has no present memories or feelings for the natural parent." (Internal quotation marks omitted.) Id., 468. Where the child does have present memories or feelings, there must be a finding that "no positive emotional aspects of the relationship survive." Id., 470. The defendant argues that unlike the situation in this case, *In re Jessica M.* and the cases cited therein involved children of an age such that their present memories and feelings were discernible. He

argues that *In re Valerie D.* should apply because of A's young age.

In *In re Valerie D.*, supra, 223 Conn. 492, the respondent mother argued that termination of her parental rights in her infant child on the basis of an absence of an ongoing parent-child relationship was improper because the commissioner was responsible for the absence of such a relationship, having had custody of the child virtually since her birth. Our Supreme Court held that under the facts of that case, the commissioner could not terminate the respondent mother's rights on that basis.[7] The court reasoned that "[a]s the facts of this case demonstrate . . . once the child had been placed in foster care pursuant to the determinations made under [General Statutes] § 46b-129, a finding of a lack of an ongoing parent-child relationship three and one-half months later was inevitable under [the termination statute] because absent extraordinary and heroic efforts by the respondent, the petitioner was destined to have established the absence of such a relationship. Thus, a factual predicate for custody, established by the lesser standard of a preponderance of the evidence, led inexorably, for all practical purposes, to the factual predicate for termination required to be established by the higher standard of clear and convincing evidence." Id., 533–34.

In *In re Valerie D.*, the adjudication of a lack of an ongoing parent-child relationship was three and one-half months after the infant child had entered foster care. The trial court in that case terminated the mother's parental rights but, in its memorandum of decision,

---

[7] For purposes of clarity, we note that our Supreme Court did not, as the respondent contends, determine that due process prohibits the termination of parental rights where the state has created conditions that establish the grounds for termination. See *In re Valerie D.*, supra, 223 Conn. 499, 532 n.35. Rather, the court held that *"under the facts of this case,"* the department could not terminate the respondent's parental rights. (Emphasis added.) Id., 499.

expressed reservations because the absence of a parent-child relationship was not for lack of effort on the mother's part. Id. The Supreme Court reversed the judgment of this court, concluding that on the basis of the record, "the lack of an ongoing parent-child relationship between the respondent and the child was the direct result of the fact that the child was in foster care . . . for almost the entire period of time between the birth and the adjudication date." Id. The Supreme Court further stated that "[w]e agree with the implicit conclusion of the trial court in this case that, in such a case, the inquiry must focus, not on the feelings of the infant, but on *the positive feelings of the natural parent.*" (Emphasis added.) Id., 532.

Thus, as we now will set forth, the similarity between *In re Valerie D.* and the present case begins and ends with the child's being placed in foster care within days of birth. Here, the respondent, rather than the commissioner, created the circumstances that caused and perpetuated the lack of an ongoing relationship between the respondent and A. See *In re Lauren R.*, 49 Conn. App. 763, 775, 715 A.2d 822 (1998) (department did not precipitate lack of ongoing relationship where respondent created condition requiring protective order). It was the respondent's action, which resulted in his incarceration, that occasioned his separation from the child. The court entered and continued a protective order in light of the allegations of sexual and physical abuse of A's sibling. It is unclear from the record whether the respondent contested those allegations on the civil side of the court. The determination of no ongoing parent-child relationship in the termination proceedings was not based on the allegations to which the respondent had pleaded nolo contendere. That determination was based on the resultant incarceration and the absence of the respondent from A's life.

During his incarceration, the respondent made no attempts to develop a relationship with A. We are not persuaded that he could not develop such a relationship simply because the protective order prohibited him from doing so. The record reveals that more than one year had passed from the adjudication of neglect to the termination of the respondent's parental rights, yet the respondent made no attempt to modify the court's protective order to one of supervised visitation, an action that occurs with a fair amount of frequency in family cases in which criminal charges are pending. In our view, to expect such an affirmative step on the part of the respondent does not require him to make "extraordinary and heroic efforts." *In re Valerie D.*, supra, 223 Conn. 533. Certainly, the absence of the respondent from A's life prevents him from taking even the most minimal steps of parenting. His absence may have prevented him from providing a home and other life necessities, but it did not prevent him from expressing interest in the health, care and well-being of the child during that absence.

We have stated that the feelings of the child are of " 'paramount importance' " in determining whether an ongoing parent-child relationship exists. *In re Amelia W.*, 62 Conn. App. 500, 506, 772 A.2d 619 (2001). As the Supreme Court expressed in *In re Valerie D.*, however, in cases involving the development of a parent-child relationship in the earliest stages of the child's life, we also must be mindful of the positive feelings of the parent toward the child. *In re Baby Girl B.*, 224 Conn. 263, 301, 618 A.2d 1 (1992). We further recognize that "the evidence regarding the quality of [a parent's] relationship with [a] child must be reviewed in the light of the [parent's] limited access to visitation at the time of the petition." Id.

In the present case, from the time that the child entered foster care until the time that the petition was

filed, the respondent never made any inquiries to the department workers about his child's health or well-being, despite being given opportunities to do so.[8] He never sought out parenting classes that would promote the development of a relationship, nor did he inquire about the availability of individual counseling or sex offender treatment classes available at his correctional facility.[9] We previously have held that even though "the respondent could not avail himself of the rehabilitative programs available through the department [of children and families] because of his incarceration, it does not excuse his failure to use the resources offered by the department of correction." *In re Hector L.*, 53 Conn. App. 359, 367–68, 730 A.2d 106 (1999). In the context of termination of parental rights due to abandonment, this court has stated that among the generally understood obligations of parenthood are the expression of love and affection for the child, and the expression of personal concern over the health, education and general well-being of the child. See *In re Shane P.*, 58 Conn. App. 244, 255, 754 A.2d 169 (2000). "A parent's interest in his child must not merely be sporadic in nature, but must exist on a consistent and continuing basis." Id., 256. We conclude that the record does not reveal that the respondent had positive feelings toward the child. Rather, it reveals the absence of any desire on the part of the respondent to develop a parent-child relationship.

The respondent's separation from the child, his failure to seek out supervised visitation and his lack of

---

[8] Steve Yachtis and Carla Perrella, the department social workers, testified that they had informed the respondent that they were handling A's case, and had given him their telephone numbers, treatment plans and expectations, but that the respondent never contacted them regarding A or the proposed treatments.

[9] Although the record indicates that the availability of such treatment was limited at the respondent's correctional facility, the record supports the finding that the respondent failed to seek out or to receive treatment and counseling for his problems.

interest in the child's life precluded the development of an ongoing parent-child relationship. We conclude, therefore, that the court's finding of a lack of an ongoing parent-child relationship was legally correct and factually supported.

II

The respondent next claims that the court improperly found that he had failed to achieve a sufficient degree of personal rehabilitation. Specifically, he claims that the evidence does not support a finding of a failure to achieve such rehabilitation and that the court improperly made that finding on the basis of his failure to participate in rehabilitative programs while he was incarcerated, which, in turn, was caused by the department's failure to offer evidence of the availability of specific programs in which he could have participated. We decline to review that claim.

"We need only uphold one statutory ground found by the court to affirm its decision to terminate parental rights. . . . To prevail on [his] claim that the court improperly terminated [his] parental rights, the respondent must successfully challenge all of the bases of the judgment terminating [his] parental rights. If [any] of the grounds on which the trial court relied are upheld on appeal, the termination of parental rights must stand." (Citation omitted; internal quotation marks omitted.) *In re Jonathon G.*, supra, 63 Conn. App. 526–27. Accordingly, because we concluded in part I that the court properly determined that one statutory ground for termination exists, namely, lack of an ongoing parent-child relationship, we need not reach the respondent's claim that the court improperly found that he had failed to achieve a sufficient degree of personal rehabilitation.

The judgment is affirmed.

In this opinion the other judges concurred.