IN RE KRISTY A. ET AL.*
(AC 24000)

Dranginis, DiPentima and Stoughton, Js.

Argued February 26—officially released June 8, 2004

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Paul Chill*, with whom were *Alain Lapter* and *Brynn Rail*, certified legal interns, and, on the brief, *Kelly Flahive, Monique Rubb, Jennifer Milici, Mark Whitford* and *Kate Cochrane*, certified legal interns, for the appellant (respondent mother).

*Stephen G. Vitelli*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellee (petitioner).

*David T. Stone*, for the minor children.

*Opinion*

DRANGINIS, J. The respondent mother appeals from the judgments of the trial court terminating her parental rights in two of her children.[1] On appeal, she claims that it was improper for the court to conclude (1) that she had failed to achieve personal rehabilitation and (2) that she had no ongoing parent-child relationship with the children. See General Statutes § 17a-112 (j) (3) (B) and (D). We affirm the judgments of the trial court.

On November 16 and 26, 2001, the petitioner, the commissioner of of children and families, filed petitions to terminate the respondent's parental rights in her daughter, who was born in April, 1996, and in her son,

---

[1] The petitioner, the commissioner of children and families, also sought to terminate the parental rights of the children's father. He consented to the termination of his parental rights and is not a party to this appeal. We therefore refer in this opinion to the respondent mother as the respondent.

who was born in April, 1999.[2] At trial, the respondent and the children were represented by counsel.[3] The court wrote a lengthy, comprehensive and detailed memorandum of decision, finding the following facts that are relevant to our review of the respondent's claims.[4]

In August, 1998, when she was thirty-seven years old, the respondent was arrested following an episode of domestic violence involving the children's father. Pursuant to her arrest, the respondent was ordered to undergo an evaluation at an addictive services facility. The evaluation revealed that the respondent had been abusing alcohol since she was seventeen years old and that she had participated in a number of programs for alcohol abuse. She also had abused marijuana and cocaine. According to the respondent, she had been

[2] The petitioner alleged that the respondent's parental rights should be terminated because (1) the children were neglected or uncared for and had been in the custody of the petitioner for at least fifteen months, that the respondent had been provided specific steps to take to facilitate the return of the children to her and had failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the children, she could assume a responsible position in their lives and (2) there was no ongoing parent-child relationship with respect to the respondent that ordinarily develops as a result of a parent having met on a continuing day-to-day basis the physical, emotional, moral or educational needs of the children and that to allow further time for the establishment or reestablishment of the parent-child relationship would be detrimental to the best interests of the children. See General Statutes § 17a-112 (j) (3) (B) and (D).

[3] At the time the court rendered its judgments in January, 2003, the children were six years old and three years old, respectively. Counsel for the children filed a brief in this appeal, arguing that the judgments of the trial court should be affirmed.

[4] The petitioner called seven witnesses to testify, including a court-appointed psychologist, two therapists who had treated the daughter, the children's original foster mother, their current foster mother, a department of children and families (department) case aide and the current department caseworker. The respondent testified on her behalf as did one of her friends, her probation officer, a substance abuse counselor, the program director of New Perceptions, an outpatient substance abuse counseling program, an alternative incarceration program case manager and two correction officers.

arrested on charges of operating a motor vehicle while under the influence of liquor on four occasions. She claimed, however, that she had been sober from May, 1992, until January, 1998. The evaluator recommended that the respondent participate in a twelve week program to address her substance abuse. The programmer determined, however, that the respondent lacked the motivation necessary to put sobriety first in her life. The respondent also was advised to seek individual counseling to address issues related to domestic violence and relationship dependency. The court found no evidence that the respondent had participated in counseling for any period of time.

In November, 1998, the respondent, a Massachusetts native, was sentenced to two years incarceration by a Massachusetts court for what was her tenth conviction in the commonwealth for operating a motor vehicle while under the influence of liquor. Since August 25, 1981, the respondent had been arrested thirteen times for that offense in Massachusetts and confined on six separate occasions.[5] In April, 1999, while the respondent was serving her November, 1998 sentence, she gave birth to her son. The respondent was given the opportunity to live with the infant at the correctional facility as long as she attended a substance abuse program. She failed the program soon after she entered it and, as a consequence, her son was placed in foster care when he was a few days old.

---

[5] The respondent had another daughter from a prior relationship, who was born in July, 1984. As a result of the respondent's alcohol addiction and drunken driving convictions, she was forced to relinquish custody of the child. In 1988 and 1989, the respondent was ordered to participate in a sixty day inpatient program at an alcohol center operated by the Massachusetts department of correction. In November, 1989, the respondent wrote to a Massachusetts probate judge, stating that her goal was to learn from her mistakes and to work toward sobriety so that she could be in a position to provide appropriate custodial care for her daughter, who required special care, as she was born blind. The respondent has had only minimum contact with her older daughter.

While the respondent was serving her sentence, the respondent's husband cared for their daughter. The department of children and families (department) obtained an order of temporary custody for the daughter in April, 1999, because the father was selling illegal substances in the child's presence, failing to place her in a child safety seat when operating his motor vehicle and leaving the child in the care of an alleged cocaine abuser. The daughter, who was almost three years old, was placed in S's foster home, where her brother had been since he was five days old.

In January, 2000, the children were returned to the respondent in Massachusetts where she was living under the terms of her probation. Four days after the children were returned, the respondent was overwhelmed by the responsibility of caring for them and asked S, the foster mother, to take them for a few days. Because she was concerned for the children's safety, S drove from Connecticut to Massachusetts to get the children. Between February and July, 2000, the children spent two to three days a week with S, usually during the weekends. The children lived with S for twenty-three days during the month of August, 2000, and had little or no contact with the respondent. While the children were living in the foster home, S's daughter, M, visited them everyday and developed a close relationship with them. The respondent later admitted that in August, 2000, she had been using crack cocaine while the children were with S. During this period of time, the respondent was receiving public assistance from the commonwealth of Massachusetts.

On September 3, 2000, the respondent agreed with her husband to commit a robbery. She entered a variety store in Connecticut with a knife and cut and robbed the seventy year old proprietor. She later admitted to having been high on cocaine at the time. She was arrested on a charge of robbery in the first degree and

confined under a high bail. As a result, she again asked S to care for the children. The children remained with S until May, 2001, when, pursuant to court order and their parents' consent, they moved to Virginia to live with relatives. The placement in the relatives' home failed after three weeks through no fault of the children. The children returned to Connecticut and have resided with M since that time.[6]

In February, 2001, the respondent was released from pretrial confinement on the robbery charge so that she could participate in an intensive, alternate incarceration center program. She was under the supervision of the office of adult probation and was required to report to the program five days a week, submit to urine testing for drug use, participate in counseling at New Perceptions, an outpatient substance abuse counseling program, and to pursue employment. She also had to wear an electronic monitor. According to the managers of each of the programs, the respondent complied with all of the programs' requirements, and her urine samples tested negative. They noted, however, that the respondent's motivation to do well was the court's mandate. In fact, she minimized her history of drug and alcohol addiction.

According to the director of New Perceptions, the respondent's primary desire was to regain her former lifestyle and to recover the material things that she had lost, such as her home and horses. The respondent intended to seek custody of the children only after she had regained her former lifestyle. The respondent also participated in a women's support group, but her attendance became sporadic as the time for sentencing neared. According to the adult probation officer who

---

[6] The children have thrived and bonded with M and her husband, whom they refer to as mom and dad. They refer to S as granny. M and her husband want to adopt the children.

monitored her pretrial release, the respondent's program was one of the most structured programs the officer had ever encountered.

With respect to the charge of robbery in the first degree, the respondent negotiated a plea agreement and was sentenced on October 12, 2001, to five years incarceration, suspended after three years, and five years of probation. The respondent was incarcerated at the time of the trial on the termination petitions.

The court found that the children had been adjudicated neglected, had been committed to the custody of the petitioner on April 4, 2001, and that in March, 2002, the commitment had been continued until further order of the court. The petitioner filed petitions to terminate the respondent's parental rights in the children in November, 2001. The trial was held on several days in September and October, 2002. Until the end of the presentation of evidence, the children were in the petitioner's custody, but had visited with the respondent at a correctional facility. After closing arguments at trial, the court ordered that the respondent's monthly visits with the children cease, but that the department facilitate telephone · communication between the respondent and the children twice a month.[7]

---

[7] The court informed the respondent that it was leaning in favor of granting the petitioner's request to terminate her parental rights, but that the petitioner had a heavy burden and that the court needed time to review the evidence in detail. The court articulated its reasons for ending the respondent's visits with the children at that time: The daughter's therapist testified that she was conflicted when she talked about the respondent and had difficulty seeing her in prison and talking with her on the telephone. Another of the daughter's therapists testified that the daughter, who had conflicted feelings about the respondent, had stabilized in M's home and had made tremendous progress. The daughter had put the past in its proper place and no longer was exhibiting concerning behaviors. The bond between the daughter and the respondent was minimal, and the prison setting was stressful on the girl. A department aide who supervised the respondent's visits with her children noted that there was no spontaneous affection on the part of the children toward the respondent. Although the daughter had ten minutes to speak with the respondent on the telephone, she kept the conversations short. The son merely did whatever his sister did.

The court also found by clear and convincing evidence that since the children had been adjudicated neglected, the respondent had failed to achieve such degree of personal rehabilitation as would encourage a belief that within a reasonable time, given the ages and needs for stability and permanency of both children, she could assume a responsible position in their lives. The court also found that the petitioner had proven by clear and convincing evidence that no ongoing parent-child relationship within the meaning of § 17a-112 (j) (3) (D) existed between the two children and the respondent. Further, the court concluded that to allow additional time for the establishment or reestablishment of a positive parent-child relationship would not be in the best interest of either child.

During the dispositional phase of the procedure, the court considered the statutory factors provided in § 17a-112 (k) and concluded that it was in the best interests of the children to terminate the respondent's parental rights. Additional facts will be included where we address the respondent's claims on appeal.

"Our standard of review on appeal from a termination of parental rights is whether the challenged findings are clearly erroneous. . . . The determinations reached by the trial court that the evidence is clear and convincing will be disturbed only if [any challenged] finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous." (Internal quotation marks omitted.) *In re Alexander C.*, 67 Conn. App. 417, 420, 787 A.2d 608 (2001), aff'd, 262 Conn. 308, 813 A.2d 87 (2003).

"On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . nor do we

retry the case or pass upon the credibility of the witnesses. . . . Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling. . . .

"A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights [under General Statutes § 17a-112 (j)] exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best [interest] of the child." (Internal quotation marks omitted.) *In re Brea B.*, 75 Conn. App. 466, 469–70, 816 A.2d 707 (2003). Here, the respondent's appellate claims concern only the adjudicatory phase of the termination proceedings.

I

The respondent claims that it was improper for the court to conclude that the petitioner had proven by clear and convincing evidence that she failed to achieve sufficient rehabilitation pursuant to § 17a-112 (j) (3) (B)[8] because (1) the court found that she had complied

---

[8] General Statutes § 17a-112 (j) provides in relevant part: "The Superior Court . . . may grant a petition filed pursuant to this section if it finds by clear and convincing evidence (1) that the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts . . . (2) that termination is in the best interest of the child, and (3) that . . . (B) the child . . . (ii) is found to be neglected or uncared for and has been in the custody of the commissioner for at least fifteen months and the parent of such child has been provided specific *steps to take to facilitate the return* of the child to the parent pursuant to section 46b-129 *and* has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ." (Emphasis added.)

with the court-ordered steps, (2) the court violated the due process clauses of the state and federal constitutions by finding that she had complied with the court-ordered steps but had failed to achieve sufficient rehabilitation, i.e., the statute, § 17a-112 (j) (3) (B), is void for vagueness as applied to her, and (3) the court based its decision on her status as a person with a disability in violation of the equal protection clause of the constitution of Connecticut.[9] We are not persuaded.

## A

We first address the petitioner's argument that the respondent's due process claim was not preserved at trial and that although she requests review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), her request has not been briefed adequately. We need not determine whether the respondent's due process claim was preserved at trial because we agree that she has not given her claim the type of rigorous analysis necessary to succeed on a constitutional challenge. The respondent has cited vagueness challenges to the termination statutes of other states and several Connecticut cases from which she has taken a rather cut-and-paste approach to the facts, language and holdings of those cases. In neither her main nor reply briefs did she apply the facts of this case to the elements of the statute, which requires the court to make four specific findings. In particular, the respondent has failed to address that portion of the statute that requires that she achieve that degree of personal rehabilitation as would encourage a belief that she could assume a responsible position in the lives of the children, considering their ages and needs. The respondent did not explain why she believes, or what facts support her belief, that she has achieved such rehabilitation to the

---

[9] The respondent withdrew her equal protection claim at oral argument in this court.

extent that she can assume a responsible position in the lives of her children. Her arguments do not reflect an understanding of the children's needs and how her addictive behavior has affected them adversely.

Where a respondent's brief "gives only cursory attention to the vagueness doctrine as applied to the facts of this case"; *In re Shyliesh H.*, 56 Conn. App. 167, 177, 743 A.2d 165 (1999); the court considers the claim abandoned. Id. We are limited, therefore, to deciding "whether the statute is unconstitutionally vague on its face." Id. That constitutional question, however, was previously considered by the Appellate Court. See id., 177–81 (concluding that § 17a-112 [c] [3] [B] not void for vagueness).[10]

## B

We will address the respondent's fact based claim that it was improper for the court to find that she had failed to achieve sufficient rehabilitation because the court also found that she had complied with the court-ordered specific steps. The petitioner has argued that the respondent's claim is premised on her assertion that the court found that she substantially had complied with all court-ordered specific steps, but that the court made no such finding. We agree with the petitioner.

The following facts, as set forth in the court's memorandum of decision, are relevant to the respondent's claim. During two prior neglect proceedings involving the children, on three separate occasions, the court, *Mack, J.,* ordered specific steps for the respondent to take in order to facilitate the return of her children, as required by General Statutes § 46b-129 (j).[11] The first

---

[10] General Statutes (Rev. to 1997) § 17a-112 (c) (3) (B), the statutory provision at issue in *In re Shyliesh H.*, has been recodified as § 17a-112 (j) (3) (B).

[11] General Statutes § 46b-129 (j) provides in relevant part: "The court shall order specific steps which the parent must take to facilitate the return of the child or youth to the custody of such parent. . . ."

series of steps was ordered on April 7, 1999.[12] At the time, the respondent was incarcerated in Massachusetts. She was ordered to gain insight into and understanding of the negative effect her substance abuse had had on her daughter. She was to refrain from substance abuse of any kind, as well as from further involvement with the criminal justice system.

Both of her children were returned to her in January, 2000. Instead of appropriately caring for them in a safe,

---

[12] The court, *Mack, J.*, ordered the following specific steps for the respondent on April 7, 1999:

1. Keep all appointments set by or with the department. Cooperate with department home visits, announced or unannounced, and visits by the child's court-appointed attorney or guardian ad litem.

2. Keep the children's whereabouts and her whereabouts known to the department, her attorney and the attorney for the children.

3. Participate in counseling and make progress toward the identified treatment goals: Parenting, individual. Treatment goals should include, but are not limited to, the following: Respondent will learn how to implement appropriate methods for providing her daughter . . . with a safe and nurturing home environment. Respondent will gain insight and understanding regarding the negative effect of her substance-alcohol problem has on her daughter.

4. Accept and cooperate with in-home services referred by the department and make progress toward the identified goals.

5. Submit to substance abuse assessment and follow recommendations regarding treatment.

6. Successfully complete substance abuse treatment, including inpatient treatment if necessary, and follow recommendations regarding aftercare treatment, including relapse prevention.

7. Submit to random drug testing; time and method of testing shall be at the discretion of the department.

8. Follow recommendations of service providers.

9. Recommended providers: Service provided at her place of incarceration.

10. Obtain or cooperate with a restraining-protective order or other appropriate safety plan as approved by the department to avoid further domestic violence incidents.

11. Sign releases authorizing the department to communicate with service providers to monitor attendance, cooperation and progress toward identified goals, and for use in future proceedings before the court.

12. Secure or maintain adequate housing and legal income.

13. No substance abuse.

14. No involvement or further involvement with the criminal justice system.

nurturing environment, the respondent continued to abuse drugs and took advantage of S by depending on her to provide appropriate care for the children. The respondent was overwhelmed and failed to gain insight into the negative effect her substance abuse had had on her children. The respondent also became further involved with the criminal justice system when she was arrested on assault and robbery charges in September, 2000.

A second set of steps was ordered on September 12, 2000, when a temporary order of custody was issued for the children.[13] Those steps were made permanent

15. Other: Respondent will visit with the children as often as the department permits and engage in appropriate parent-child interaction.

[13] The court, *Mack, J.*, again ordered steps for the respondent on September 12, 2000, as follows:

1. Keep all appointments set by or with the department. Cooperate with the department home visits, announced or unannounced, and visits by the child's court-appointed attorney or guardian ad litem.

2. Keep the children's whereabouts and her whereabouts known to the department, her attorney and the attorney for the children.

3. Participate in counseling and make progress toward the identified treatment goals: Parenting, individual.

4. Accept and cooperate with in-home support services referred by the department.

5. Submit to substance abuse assessment and follow recommendations regarding treatment, including inpatient treatment if necessary, aftercare and relapse prevention.

6. Submit to random drug testing; time and method of the testing shall be at the discretion of the department.

7. Cooperate with court-ordered evaluations or testing.

8. Sign releases authorizing the department to communicate with service providers to monitor attendance, cooperation and progress toward identified goals, and for use in future proceedings before this court.

9. Secure or maintain adequate housing and legal income.

10. No substance abuse.

11. No involvement or further involvement with the criminal justice system. Cooperate with the office of adult probation or parole officer and comply with conditions of probation or parole.

12. Consistently and timely meet and address the children's physical, educational, medical or emotional needs, including, but not limited to, keeping the children's appointments with their medical, psychological, psychiatric or educational providers.

when the children were submitted to the commissioner's custody a second time on April 4, 2001. The respondent had access to services during her presentence release and postsentence confinement to deal with her abuse of various substances. She took a parenting class. The court found no evidence, however, that the respondent had dealt in any way with her mental health issues. Kathleen J. Murphy, the court-appointed psychologist, noted the respondent's need for long-term mental health therapy. The court concluded that the respondent's lack of compliance with both sets of steps underscored the concern raised by several witnesses as to whether she would be able to refrain from substance abuse and would continue substance therapy and mental health services when she was not under the supervision of correction and probation authorities.

Section 17a-112 (j) requires in relevant part that the parent of a child for whom a termination of rights petition has been filed be "provided specific steps to take to facilitate the return of the child . . . ." The petitioner has argued that the court found that the respondent failed to comply with the court's specific steps. The respondent contends that the state was precluded from taking such a position because of the testimony given by Lorin Brennan, a department social worker assigned to the respondent's case in January, 2000. The respon-

13. Make all necessary child care arrangements, ensuring that the children are adequately supervised and cared for by appropriate caretakers.

14. Immediately advise the department of any changes in the composition of the household to ensure that the change does not compromise the health and safety of the children.

15. Maintain the children within the state of Connecticut during the duration of this case except for temporary travel out of state with the authorization of the department or the court in advance.

16. Cooperate with the children's therapy.

17. Visit the children as often as the department permits.

18. Other: Respondent will engage in services while incarcerated while addressing substance abuse issues and participating in counseling.

dent has argued that because Brennan was a party to the case, her testimony is a binding judicial admission.

Our review of the transcript discloses that on direct examination in response to the petitioner's questions about the services the department offered the respondent, Brennan testified that it offered services in substance abuse treatment, parenting classes, individual counseling and random urine tests. She also testified that the respondent engaged in all of those services, except for the parenting classes. On cross-examination, in response to a question from the respondent's counsel, Brennan testified that the respondent had complied with the specific steps.

The respondent's contention that Brennan's testimony on cross-examination is binding on the respondent and the court is misplaced for a number of reasons. "Judicial admissions are voluntary and knowing concession of fact by a party or a party's attorney occurring during judicial proceedings." *Jones* v. *Forst*, 41 Conn. App. 341, 346, 675 A.2d 922 (1996). Whether a party's statement is a judicial admission or an evidentiary admission is a factual determination to be made by the trial court. See *Sweet* v. *Sweet*, 190 Conn. 657, 662, 462 A.2d 1031 (1983). "The distinction between judicial admissions and mere evidentiary admissions is a significant one that should not be blurred by imprecise usage. . . . While both types are admissible, their legal effect is markedly different; judicial admissions are conclusive on the trier of fact, whereas evidentiary admissions are only evidence to be accepted or rejected by the trier." (Internal quotation marks omitted.) *Tianti* v. *William Raveis Real Estate, Inc.*, 231 Conn. 690, 695 n.6, 651 A.2d 1286 (1995).

Also, it is not clear from the record, and the respondent failed to seek an articulation to support her position, that Brennan was a party to the termination

proceedings. Cf. *In re Christopher A.*, 22 Conn. App. 656, 657, 578 A.2d 1092 (1990). The court made no finding that Brennan was the petitioner's designated representative. See General Statutes § 17a-92.[14]

Furthermore, as we stated in the standard of review, we will not overturn a trial court's determination that the evidence is clear and convincing unless the finding is not supported by the evidence and is clearly erroneous in light of the evidence in the whole record. *In re Alexander C.*, supra, 67 Conn. App. 420. In a termination of parental rights case, the court is the trier of fact. "We defer to the trier of fact's assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. The trier is the judge of the credibility of all the witnesses and the weight to be given their testimony, and may accept part, all or none of the testimony. . . . Where, as here, the record reveals that the trial court's ultimate conclusions are supported by clear and convincing evidence, we will not reach an opposite conclusion on the basis of any one segment of the many factors considered in a termination proceeding." (Internal quotation marks omitted.) *In re Victoria B.*, 79 Conn. App. 245, 262–63, 829 A.2d 855 (2003). Here, the evidence in the whole record supports the court's conclusion that the respondent did not deal with her mental health issues as ordered in the court's specific steps.

C

We now turn to the respondent's claim that it was improper for the court to find that she had failed to achieve the degree of rehabilitation necessary to encourage a belief that within a reasonable time she could assume a responsible position in the lives of her children. We conclude that the court's finding was not clearly erroneous.

---

[14] It does not appear that Brennan signed the petitions for the termination of the respondent's parental rights.

In its memorandum of decision, before coming to its conclusion that the respondent had failed to achieve sufficient rehabilitation, the court set out the respondent's behaviors, practices and lifestyle from which she was required to rehabilitate herself. In other words, what did the respondent need to do to provide safe and appropriate care for the children? The department became involved with the respondent and the daughter in the fall of 1998 after the respondent was convicted for the tenth time of operating a motor vehicle while intoxicated. She was then incarcerated for the sixth time for that offense. The respondent's first operating a motor vehicle while intoxicated offense occurred in 1981. Despite her representation that she had been sober from May, 1992, until January, 1998, her criminal record reflects that she was arrested for drunken driving on October 5, 1992. She was also arrested for that offense on May 18 and June 15, 1998.

In addition to her addiction to alcohol, the respondent disclosed to Murphy that she had been addicted to cocaine since she was twenty-three years old. She lost custody of her older daughter due to her substance abuse and antisocial behavior. The respondent's relationships with the fathers of her children were physically abusive and involved substance abuse. Despite the fact that she had lost custody of her older daughter due to her addictions and behavior, only once did she voluntarily participate in a substance abuse program. She has, however, participated in a number of substance abuse and therapeutic programs, all of which were mandated by the court as a condition of a sentence of imprisonment.[15] The respondent was released early from two of the Massachusetts court-ordered programs before she had completed them, but she never participated in an aftercare program to maintain her sobriety.

---

[15] Courts in both the commonwealth of Massachusetts and the state of Connecticut have issued such orders.

In the fall of 2000, the department once again became involved with the respondent and then two of her children when she yet again was incarcerated for very serious offenses. She had been arrested and charged with robbery in the first degree with a deadly weapon, assault in the second degree on an elderly person and larceny in the fifth degree. On the date of her arrest, the respondent faced a potential twenty-five and one-half year sentence of which seven years were mandatory. While the respondent was on pretrial release in February, 2001, she was under the close supervision of the office of adult probation and the alternative incarceration program. She fully cooperated with the services arranged by the court, the petitioner and private agencies. She also obtained full-time employment, and all of her urine tests were negative. Given her positive performance under the court-ordered directives and despite the violent crime she had committed and her long criminal history of drunken driving, the respondent was able to negotiate a plea bargain. The respondent was sentenced to a three year term of incarceration for having committed robbery with a dangerous instrument rather than with a deadly weapon. Given the respondent's history of performing well under the strictures of the criminal justice system and the prospect of long-term incarceration, the termination court was convinced that she was motivated to do well in pretrial release by the prospect of receiving the shortest possible term of incarceration.

As a result, the court concluded that unless she was threatened with incarceration or was incarcerated, the respondent did nothing to address her substance abuse and behavioral problems. Although three of her children had been removed from her care, she never engaged in a therapy program to avoid relapsing into substance abuse or to improve her ability to be a parent. The court, therefore, found that any goal the respondent had of becoming an appropriate parent for the children

at issue in these termination proceedings was a low priority.

In reaching this conclusion, the court was aware of the controlling legal authority. "[I]t is the right and the duty of the [trier of fact] to draw reasonable and logical inferences from the evidence. . . . In considering the evidence introduced in a case, [triers of fact] are not required to leave common sense at the courtroom door . . . nor are they expected to lay aside matters of common knowledge or their own observations and experience of the affairs of life, but, on the contrary, to apply them to the facts in hand, to the end that their action may be intelligent and their conclusions correct." (Internal quotation marks omitted.) *In re Carissa K.*, 55 Conn. App. 768, 783, 740 A.2d 896 (1999).

"Our Supreme Court has held that § [17a-112 (j) (3) (B)] requires the trial court to analyze the respondent's rehabilitative status as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable within a reasonable time. . . . A determination by the trial court under § [17a-112 (j) (3) (B)] that the evidence is clear and convincing that the parent has not rehabilitated [himself] will be disturbed only if that finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous." (Internal quotation marks omitted.) Id., 779. "[O]n review by this court every reasonable presumption is made in favor of the trial court's ruling." (Internal quotation marks omitted.) *In re Eden F.*, 250 Conn. 674, 705–706, 741 A.2d 873 (1999).

"Personal rehabilitation refers to the reasonable foreseeability of the restoration of a parent to his or her former constructive and useful role as a parent, not merely the ability to manage his or her own life." (Internal quotation marks omitted.) *In re Stanley D.*, 61 Conn. App. 224, 230, 763 A.2d 83 (2000). "In determining

whether a parent has achieved sufficient personal reha-
bilitation, a court may consider whether the parent has
corrected the factors that led to the initial commitment,
regardless of whether those factors were included in
specific expectations ordered by the court or imposed
by the department. . . . Accordingly, successful com-
pletion of expressly articulated expectations is not suffi-
cient to defeat [the petitioner's] claim that the parent
has not achieved sufficient rehabilitation." (Citation
omitted.) *In re Vincent D.*, 65 Conn. App. 658, 670, 783
A.2d 534 (2001).

Here, as in *In re Vincent D.*, it was the respondent's
substance abuse, primarily, and its adverse conse-
quences that led to the children's commitment to the
department. As the court found, the respondent was
able to comply with the pretrial release program
because it was highly structured, and she was motivated
to resume her former lifestyle and to negotiate a favor-
able plea agreement. Laudable as the respondent's
behavior may have been during her pretrial release, it
was not relevant to the issue before the court, that is
whether the respondent would be able to assume a
responsible position in the lives of her children, given
their ages and needs. The respondent's history of addic-
tion demonstrates that many years prior to the birth of
these children, she had participated in programs
designed to help her confront her addictions and to
remain sober. She was unable to do so even when faced
with the loss of her older daughter. It appears that
she can remain sober only while she is in a structured
environment in order to achieve short-term goals. It
is not her goal to place her children's needs above
her desires.

"[I]n assessing rehabilitation, the critical issue is not
whether the parent has improved [her] ability to manage
[her] own life, but rather whether [she] has gained the
ability to care for the particular needs of the child at

issue. . . . Thus, even if a parent has made successful strides in her ability to manage her life and may have achieved a level of stability within her limitations, such improvements, although commendable, are not dispositive on the issue of whether, within a reasonable period of time, she could assume a responsible position in the life of her child." (Citations omitted; internal quotation marks omitted.) *In re Victoria B.*, supra, 79 Conn. App. 255.

Furthermore, despite her claim, the respondent has failed to provide any analysis of the language of the statute that would lead us to conclude that a termination petition must be denied when a respondent has complied with the court-ordered steps. But see part I B. The words of the statute are clear. The steps are "to *facilitate* the return of the child . . . to the . . . parent. . . ." (Emphasis added.) General Statutes § 46b-112 (j). The word *facilitate* means "to make easier or less difficult . . . ." Webster's Third New International Dictionary. In other words, the services provided to a respondent parent are intended to help that parent change behaviors that are not appropriate or to teach skills the parent needs to assume a responsible position in the child's life given the child's needs and age. If a parent is unwilling or unable to adopt the necessary behaviors, no matter how many classes the parent attends, the parent has not achieved sufficient rehabilitation. As the court noted in its memorandum of decision, although the respondent attended various therapy sessions and substance abuse programs, she did little more than that. She failed to understand her role in the process and the reason why the services were being provided to her. She failed to internalize the new behaviors that were needed to facilitate the return of the children to her care.

For all these reasons, we conclude that the court's finding that the respondent had failed to achieve sufficient rehabilitation was not clearly erroneous.

## II

The respondent's second claim is that it was improper for the court to find that she had no ongoing parent-child relationship with her children. "We need only uphold one statutory ground found by the court to affirm its decision to terminate parental rights. . . . To prevail on [his] claim that the court improperly terminated [his] parental rights, the respondent must successfully challenge all of the bases of the judgment terminating [his] parental rights. If [any] of the grounds on which the trial court relied are upheld on appeal, the termination of parental rights must stand." (Internal quotation marks omitted.) *In re Alexander C.*, supra, 67 Conn. App. 427. Because we have concluded that the court properly determined that the respondent's parental rights in the children should be terminated on the ground that she failed to achieve sufficient rehabilitation; General Statutes § 17a-112 (j) (3) (B); we need not reach her second claim. See *In re Victoria B.*, supra, 79 Conn. App. 256 n.11.

The judgments are affirmed.

In this opinion the other judges concurred.