******************************************************************

   The ''officially released'' date that appears near the beginning of this opinion is the date the opinion was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

   This opinion is subject to revisions and editorial changes, not of a substantive nature, and corrections of a technical nature prior to publication in the Connecticut Law Journal.

******************************************************************

IN RE JA'LA L. ET AL*
(AC 44072)

Prescott, Elgo and Pavia, Js.

*Syllabus*

The respondent mother appealed to this court from the judgments of the
    trial court terminating her parental rights with respect to her minor
    children, who had previously been adjudicated uncared for. The respon-
    dent claimed that there was insufficient evidence to establish, by clear
    and convincing evidence, that termination of her parental rights was in
    the children's best interest and that, in light of her continuing efforts
    to rehabilitate and the relationship she has with them, she would be
    capable of rehabilitating and resuming a responsible position in her
    children's lives as required by the applicable statute (§ 17a-112) if given
    additional time and appropriate services. *Held* that there was sufficient
    evidence to support the trial court's conclusion that it was in the best
    interests of the children to terminate the respondent's parental rights; the
    respondent did not challenge as clearly erroneous any of the subordinate
    facts on which the court relied for its conclusion, the respondent's
    argument that she should have been permitted more time to rehabilitate
    was unavailing, as it was inconsistent with the repeated recognition by
    our Supreme Court of the importance of permanency in children's lives,
    and the respondent's claim ignored the particular needs of the children,
    who had experienced confusion and anxiety due to the respondent's
    sporadic visits and their uncertainty about future placements and who
    would benefit from the ability to build relationships and connect with
    permanent homes.

Argued October 13—officially released December 1, 2020**

*Procedural History*

Petitions by the Commissioner of Children and Fami-
lies to terminate the respondents' parental rights with
respect to their minor children, brought to the Superior
Court in the judicial district of New Haven, Juvenile
Matters, and tried to the court, *Conway, J.*; judgments
terminating the respondents' parental rights, from
which the respondent mother filed an appeal to this
court. *Affirmed.*

*David Rozwaski*, assigned counsel, for the appellant
(respondent mother).

*Kristin Losi*, assistant attorney general, with whom,
on the brief, were *William Tong*, attorney general, and
*Benjamin Zivyon* and *Evan O'Roark*, assistant attor-
neys general, for the appellee (petitioner).

*Opinion*

PRESCOTT, J. The respondent, Shanea L., appeals from the judgments of the trial court rendered in favor of the petitioner, the Commissioner of Children and Families, terminating her parental rights with respect to her daughters, Ja'La L. and Ja'Myiaha L., on the ground that the respondent has failed to achieve a sufficient degree of personal rehabilitation pursuant to General Statutes § 17a-112 (j) (3) (B) (i).[1] On appeal, the respondent concedes that the evidence was sufficient to prove an adjudicatory ground, but claims that the court improperly concluded that termination was in the best interests of the children. We affirm the judgments of the trial court.

The record reveals the following relevant facts and procedural history, as set forth by the trial court in its memorandum of decision or as otherwise undisputed in the record. The respondent is the mother of four children, only two of whom are the subject of this proceeding, namely, Ja'La and Ja'Myiaha. The respondent has a history with the Department of Children and Families (department) that dates back to 2010.[2] Only the respondent's youngest child, Jordyn L., remained in her care at the time of these proceedings.[3]

In January, 2015, the Probate Court vested guardianship of Ja'La and Ja'Myiaha with their maternal great grandmother, due to the respondent's homelessness, substance abuse, and mental health issues. In April, 2017, the girls' great grandmother became unable to care for them because of her own medical conditions. On May 2, 2017, the petitioner obtained an order of temporary custody of Ja'La and Ja'Myiaha. Two days later, the petitioner filed neglect petitions, and, on June 8, 2017, the children were adjudicated uncared for[4] and committed to the care and custody of the petitioner.

Shortly thereafter, Ja'La and Ja'Myiaha were placed with Ja'La's paternal aunt. In October, 2017, while in her aunt's care, Ja'La was severely burned by hot water. She spent two months in a hospital receiving treatment for second and third degree burns, during which time the department offered to transport and supervise weekly hospital visits between the respondent and Ja'La. The respondent visited Ja'La at the hospital only once. Ja'Myiaha was removed from the aunt's care and placed in her present nonrelative foster home, and Ja'La joined her sister on her discharge from the hospital. Ja'La has since been removed from that foster home because she threatened to kill Ja'Myiaha and attempted to physically assault her on a number of occasions.[5]

On March 8, 2018, a permanency plan of reunification was approved by the court, and the respondent was issued court-ordered specific steps. Specifically, the respondent was ordered, inter alia, to stop using illegal drugs, seek recommended substance abuse treatment,

take part in individual therapy, and visit with her children as often as the department permits. With regard to visitation, the respondent was inconsistent in her efforts to see her children. She became more consistent beginning in August, 2018, when she had two hour supervised visits every other week with both girls. In April, 2019, however, the respondent ceased attending visits entirely. Approximately six months passed before the respondent saw Ja'La and Ja'Myiaha again in connection with a court-ordered psychological evaluation.[6] During those intervening six months, the respondent also did not phone her children despite being permitted to do so.

As to the respondent's substance abuse and recommended treatment, in April, 2018, the department referred her to Family Based Recovery, but she denied drug usage and chose not to submit to urine/hair testing. In December, 2018, the respondent completed a substance abuse evaluation at Midwestern Connecticut Council of Alcoholism (MCCA), at which time she acknowledged smoking marijuana two times a day, and her urine screen tested positive for marijuana. Consequently, the respondent was recommended to attend the MCCA Intensive Outpatient Program. She claimed, however, that she could not attend the program due to child care issues. The respondent was then referred to Multicultural Ambulatory Addict Services (MAAS), which is a drug treatment program with a child care component. She started the MAAS program in January, 2019, but stopped attending after a March, 2019 incident in which Jordyn assaulted another child and was banned from the program's daycare.

With regard to individual therapy, the department referred the respondent to an in-home program called K-Assist in June, 2017. She worked with K-Assist for about one year, did not attend the psychiatric evaluation that her clinician recommended, and ultimately chose not to participate in the program. For a period of time, the respondent was not willing to engage in any other services offered by the department. In February, 2019, the respondent attended an intake appointment at Integrated Wellness, but her participation in the program was short lived.

On March 8, 2019, the petitioner filed termination of parental rights petitions with respect to the two children on the ground that the court had found them uncared for in a prior proceeding and the respondent has failed to achieve the degree of personal rehabilitation that would encourage the belief that within a reasonable time, considering the age and the needs of the children, she could assume a responsible position in the lives of the children. See General Statutes § 17a-112 (j) (3) (B) (i).

The trial on the termination of parental rights petitions took place on December 16, 2019.[7] The petitioner

presented one witness, social worker Elizabeth Reynoso. Reynoso testified, inter alia, that (1) the respondent did not successfully utilize the department's services to address her own needs, (2) Ja'La and Ja'Myiaha have specialized needs that the respondent is not capable of meeting, (3) in a conversation the week prior to trial, the respondent acknowledged that she was not currently able to meet the needs of her children and that she had not done what she needed to do to comply with specific steps,[8] and (4) the department has concerns about the respondent's ability to manage three children at once, particularly because she already was experiencing challenges with the only child currently in her care. The respondent testified on her own behalf, stating, inter alia, that she had started seeing a therapist whom she likes three weeks prior to trial.

On December 20, 2019, the court issued a memorandum of decision granting the petitions to terminate the parental rights of the respondent.[9] Specifically, the court noted that the respondent "suffers from major depressive disorder, post-traumatic stress disorder [(PTSD)] and a personality disorder. At times her anxiety precludes her from leaving her home and she habitually consumes marijuana [despite not having a medical prescription]. [The department] has made reasonable efforts to address [the respondent's] debilitating mental health issues and to foster [the respondent's] relationship and interaction with the girls. The [department's] efforts have had little to no positive impact because [the respondent] has been noncompliant and/or unengaged in referrals and services, the most glaring being her failure to engage in mental health and substance use treatment and her April, 2019 cessation of contact with Ja'La and Ja'Myiaha. Similarly, the testimony and exhibits reveal the respondent . . . is unable or unwilling to benefit from reunification efforts." (Footnote omitted.)

The court also quoted portions of Ines Schroeder's December, 2019 psychological evaluation of the respondent.[10] Specifically, Schroeder indicated in her evaluation that "[the respondent] strives to meet her own needs first with little consideration for the effect on others. This was noted when she voiced that she stopped visits [in April, 2019] because she . . . struggled . . . greatly in having them because they left her too emotional and upset. While it is important that she took care of herself, her choice left her daughters feeling abandoned by [the respondent]. She did not share with them what she was doing, why she was doing it, or work with a therapist to help her process and manage these emotions so she can be available to her daughters. Her choices left her daughters to suffer emotionally. . . .

"While she feels more competent now than in the past, she recognizes her limits and admitted her need

to stay away from visits because she is too emotionally overwrought by them. She is pessimistic about achieving her goals. She desires to be present for her children but feels emotionally unprepared. She recognizes her inability to care for the girls now but fears what her decision will mean regarding her future relationship with her children. She wishes to have more time to prepare and be available to the girls."

Schroeder concluded that "[i]t is highly recommended that visits with [the respondent] stop unless it is determined that they are going to [be reunified] in the near future and the visits can be consistent and nurturing for them. Random inconsistent visits are very confusing to the girls and the discussion of potentially returning to her care without a clear understanding of when that might happen are emotionally damaging. When they witness their younger sister [Jordyn] engaging with [the respondent] and remaining in her care when they cannot can also be emotionally damaging. For them, it can affirm a belief that they are not wanted or valued as their sister is."

With regard to the individual needs of the children, the court found that Ja'La has "profound emotional and behavioral issues," including PTSD and disruptive mood dysregulation. She was hospitalized multiple times in 2018, and again in December, 2019, due to her unsafe and out of control behaviors. Ja'Myiaha is diagnosed with PTSD, attention deficit hyperactivity disorder, and enuresis, and her treatment goals in 2018 through 2019 included "gaining control over her fits of anger, physical and verbal aggression towards animals and people, refusing to listen to adults, nightmares, lying, screaming and difficulty expressing herself." (Internal quotation marks omitted.) The court further stated that "Ja'Myiaha has made considerable progress over the past year or so but she continues to need a level of care that is far beyond [the respondent's] capabilities. Any contact between [the respondent] and the girls is detrimental to the girls' well-being . . . ."

Accordingly, the court found that the ground for termination asserted in the petitions, namely a failure to rehabilitate, had been proven. The court next considered the appropriate disposition of the children and made detailed written findings regarding their best interests pursuant to the criteria set forth in § 17a-112 (k).[11] On the basis of these findings, the court determined by clear and convincing evidence that termination of the respondent's rights was in the best interests of the children. Accordingly, the court terminated her parental rights and appointed the petitioner as the children's statutory parent.

On appeal, the respondent concedes that there were sufficient grounds for the termination of her parental rights. She contends, however, that the trial court improperly determined that it was in the best interests

of the children to terminate her parental rights. Specifically, the respondent argues that, in light of her continuing efforts to rehabilitate and the relationship she has with her daughters, the court should have concluded that she is capable of rehabilitating and becoming a responsible parent if given additional time and appropriate services.

We begin with general principles of law and our applicable standard of review. "Proceedings to terminate parental rights are governed by § 17a-112. . . . Under [that provision], a hearing on a petition to terminate parental rights consists of two phases: the adjudicatory phase and the dispositional phase. During the adjudicatory phase, the trial court must determine whether one or more of the . . . grounds for termination of parental rights set forth in § 17a-112 [(j) (3)] exists by clear and convincing evidence." (Internal quotation marks omitted.) *In re Egypt E.*, 327 Conn. 506, 526, 175 A.3d 21, cert. denied sub nom. *Morsy E.* v. *Commissioner of Children & Families*, U.S. , 139 S. Ct. 88, 202 L. Ed. 2d 27 (2018). "If the trial court determines that a statutory ground for termination exists, then it proceeds to the dispositional phase. During the dispositional phase, the trial court must determine whether termination is in the best interests of the child. . . . The best interest determination also must be supported by clear and convincing evidence." (Citations omitted; footnote omitted; internal quotation marks omitted.) *In re Davonta V.*, 285 Conn. 483, 487–88, 940 A.2d 733 (2008).

At oral argument before this court, counsel for the respondent acknowledged that the respondent's claim on appeal is, in essence, that there was insufficient evidence to establish, by clear and convincing evidence, that termination was in the best interests of the children. The petitioner also invites us to employ the evidentiary sufficiency standard of review in this case. Accordingly, we will apply that standard.[12] When "the appropriate standard of review is one of evidentiary sufficiency . . . [the question is] whether the trial court could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify its [ultimate conclusion]. . . . When applying this standard, we construe the evidence in a manner most favorable to sustaining the judgment of the trial court. . . . [W]e review the trial court's subordinate factual findings for clear error, but we review the court's ultimate conclusion . . . on the basis of whether the cumulative effect of the evidence was sufficient to justify the ultimate conclusion." (Citation omitted; internal quotation marks omitted.) *In re James O.*, 160 Conn. App. 506, 522, 127 A.3d 375 (2015), aff'd, 322 Conn. 636, 142 A.3d 1147 (2016).

Here, there is abundant evidence in the record to

support the court's conclusion that it was in the best interests of the children to terminate the respondent's parental rights. The respondent does not challenge as clearly erroneous any of the subordinate facts on which the court relied in concluding that termination was in the best interests of the children. Moreover, the respondent's argument that she should have been permitted more time to rehabilitate before her parental rights were terminated is inconsistent with our Supreme Court's repeated recognition of "the importance of permanency in children's lives." *In re Davonta V.*, supra, 285 Conn. 494–95 ("Virtually all experts, from many different professional disciplines, agree that children need and benefit from continuous stable home environments. . . . [S]table and continuous care givers are important to normal child development. Children need secure and uninterrupted emotional relationships with the adults who are responsible for their care." (Citation omitted; internal quotation marks omitted.)).

Likewise, the respondent's claim ignores the particular needs of Ja'La and Ja'Myiaha as expressed in Schroeder's recommendation following the December, 2019 psychological evaluation. Specifically, Schroeder stated that "[i]t is recommended that no further time be afforded to [the respondent] to reunify with Ja'La and Ja'Myiaha as the girls would benefit from some stability about their future and permanency. . . . [The visits the children have had with the respondent] are sporadic and also become a source of unrest and unease. . . . They are confused about their permanent placement because of these random visits. . . . The children continue to wonder whether they are going back with [the respondent] or not. This is a source of unrest and anxiety for them. . . . Discussions in the visits about the future and returning to [the respondent's] care leave them feeling confused and stressed. This disrupts their ability to connect and bond with the people who are caring for them full time. It can also disturb their sense of loyalty and worry their biological mother may be upset they are making these bonds. The severance of the relationship [with the respondent] will permit them to process the loss but build the relationships that will be connected to their permanent homes." Because there was sufficient evidence in the record to support the court's conclusion that it was in the best interests of the children to terminate the respondent's parental rights, the respondent's claim fails.

The judgments are affirmed.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** December 1, 2020, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

<sup>1</sup> The court also terminated the parental rights of Ja'La's father, Raymond

B., and Ja'Myiaha's putative fathers, Kenneth V. and John Doe, in the same proceeding on the ground of abandonment. None of these individuals appealed from the judgments, and, therefore, we refer to Shanea L. as the respondent in this opinion.

[2] In 2010, the respondent was arrested after hitting her oldest child, Jaden L., in the head and causing him to fall down the stairs. The allegations of abuse were substantiated and guardianship was later transferred to Jaden's maternal uncle and his girlfriend.

[3] The department has expressed concern with the respondent's ability to parent Jordyn. According to the respondent, Jordyn was briefly removed from her care. Subsequently, Jordyn was adjudicated neglected and remained in the respondent's care under a court-ordered period of protective supervision.

[4] We note, as did the trial court in its memorandum of decision, that although many of the exhibits from the trial on the termination of the respondent's parental rights reflect that the girls were adjudicated neglected, the original allegation of neglect was amended to allege that the girls were uncared for.

[5] On December 10, 2019, Ja'La was removed and placed in a new foster home, in which she is the only child.

[6] As part of the evaluation, Ines Schroeder, a psychologist, supervised an interaction between the respondent, Ja'La, Ja'Myiaha, and the respondent's youngest child, Jordyn, on November 7, 2019. A written report regarding the evaluation is dated December 7, 2019.

[7] On March 5, 2019, the respondent filed a motion to revoke commitment of Ja'La and Ja'Mayiaha, pursuant to Practice Book § 35a-14a, alleging that the reason for commitment no longer exists and it is in the children's best interests to return to her care. A hearing on that motion was consolidated with the termination of parental rights trial. Ultimately, the court denied the respondent's motion to revoke commitment, finding that she failed to sustain her burden of proof because grounds for commitment continued to exist.

[8] The respondent agreed that this conversation took place and confirmed that she told Reynoso that (1) she has not done what was asked of her, and (2) she was tired of fighting for the children and hoped that they would get the help that they needed.

[9] Both the attorney for the minor children and their guardian ad litem supported the termination of the respondent's parental rights. Additionally, on appeal, the guardian ad litem for the minor children adopted the petitioner's brief and supports the affirmance of the trial court's decision.

[10] Court-ordered psychological evaluations of the respondent, Ja'La, and Ja'Myiaha were conducted by Schroeder in July, 2018 and December, 2019.

[11] General Statutes § 17a-112 (k) provides: "Except in the case where termination of parental rights is based on consent, in determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered, provided and made available to the parent and the child by an agency to facilitate the reunion of the child with the parent; (2) whether the Department of Children and Families has made reasonable efforts to reunite the family pursuant to the federal Adoption and Safe Families Act of 1997, as amended from time to time; (3) the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order; (4) the feelings and emotional ties of the child with respect to the child's parents, any guardian of such child's person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (5) the age of the child; (6) the efforts the parent has made to adjust such parent's circumstances, conduct, or conditions to make it in the best interest of the child to return such child home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions, and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child; and (7) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."

[12] We leave open the question as to whether this is the appropriate standard of review that must be applied when reviewing a court's determination that termination is in the best interest of a child. See *In re Avia M.*, 188 Conn. App. 736, 739, 205 A.3d 764 (2019) ("the standard of review for the court's determination of the best interest of the child is clearly erroneous"). Additionally, we note that we have previously declined to extend the evidentiary sufficiency standard of review to the court's consideration of the best interest of a child where the evidence supported our decision under either standard. See *In re Jacob W.*, 178 Conn. App. 195, 205 n.10, 172 A.3d 1274 (2017) (citing *In re Elijah G.-R.*, 167 Conn. App. 1, 29–30 n.11, 142 A.3d 482 (2016)), aff'd, 330 Conn. 744, 200 A.3d 1091 (2019); *In re Nioshka A.N.*, 161 Conn. App. 627, 637 n.9, 128 A.3d 619, cert. denied, 320 Conn. 912, 128 A.3d 955 (2015). This case constitutes another instance in which the evidence supports our decision under either standard.

————————————————